

**IT IS ORDERED as set forth below:**

**Date: May 19, 2021**

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 15-58443-WLH |
| NILHAN DEVELOPERS, LLC, | CHAPTER 11 |
| Debtor, | |
| NILHAN DEVELOPERS, LLC, | AP NO. 21-5008-WLH |
| Plaintiff, | |
| v. | |
| RONALD GLASS, SOLELY AS TRUSTEE OF THE BANKRUPTCY ESTATE OF NILHAN DEVELOPERS, LLC, AND RASS ASSOCIATES, LLC, A GEORGIA LIMITED LIABILITY COMPANY, | |
| Defendants. | |

## ORDER ON MOTIONS TO DISMISS

1

**THIS MATTER** is before the Court on the Motions to Dismiss filed by Ronald Glass, Solely as Trustee of the Bankruptcy Estate of Nilhan Developers ("Mr. Glass") (Doc. No. 9) and Rass Associates, LLC, a Georgia Limited Liability Company ("Rass") (Doc. No. 11).   Both Mr. Glass and Rass seek dismissal of the above-styled Complaint, and Rass seeks dismissal with prejudice, for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6), and Rass alternatively seeks dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for the Court to abstain from this adversary proceeding.   For the reasons stated below, the Court finds dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate.

## I.     DISMISSAL STANDARD

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)) (internal quotation marks omitted).   A complaint is plausible on its face when the plaintiff pleads sufficient factual content for the court to draw the reasonable inference the defendant is liable for the conduct alleged.   Id.

While the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678, the purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case.   Rather, the purpose of a motion to dismiss is to ensure the plaintiff has provided notice of the grounds which entitle him to relief.   Twombly, 550 U.S. at 561.   The facts alleged must be taken as true, and "dismissal is inappropriate merely because it appears unlikely . . . the plaintiff can prove those facts or will ultimately prevail on the merits."   Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515

2

F.3d 224, 231 (3d Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, all well-pled facts are taken as true and viewed in the light most favorable to the plaintiff. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). The Court may consider attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007). Courts may also consider documents central to the plaintiff's claim and undisputed, meaning the authenticity of the document is not challenged. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (citation omitted); Iqbal, 556 U.S. at 678 (citation omitted). Additionally, the Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Deerpoint Grp., Inc. v. Agrigenix, LLC, 393 F. Supp. 3d 968, 974 (E.D. Cal. 2019) (quoting Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013)).

Pursuant to Fed. R. Evid. 201(b), the Court can take judicial notice of its own docket and the contents of documents filed in the case and may do so without converting a motion to dismiss into a motion for summary judgment. See Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010); U.S. v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987). Pursuant to an order entered May 4, 2021, the Court provided notice to the parties that it intended to take judicial notice of its own docket and the contents of all pleadings, orders, evidence and transcripts and gave the parties ten days to file an objection. No objections were filed. Accordingly, the Court will take judicial notice of the docket of Nilhan Developer, LLC's Chapter 11 case including all related adversary proceedings maintained by the clerk of this Court and the contents of all pleadings and other

3

documents filed, all orders entered, and all evidence and transcripts from the hearings held before the Court during the pendency of the Chapter 11 case and related adversary proceedings.

## II.    FACTS

With this background, the Court will examine the facts alleged in the Complaint, as well as the facts developed in this six-year-old case.

### a.    Facts Alleged in Complaint

Nilhan Developers, LLC ("ND") filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 4, 2015.   On April 11, 2017, ND filed a motion to sell certain property at 2800, 2810, 2812, and 2814 Spring Road, Atlanta, Georgia, also known as Emerson Center (the "Property") to Westplan Investors Acquisitions, LLC ("Westplan") for $7 million (Case No. 15-58440 Doc. No. 634).   Westplan then assigned all of its rights and interests under the contract to Accent Cumberland Apartments, LP ("Accent").   The sale contract included a "Buyback" provision in paragraph 26, which authorized ND to repurchase the Property by a specific date and time ("Buyback Option").   The contract provided that if, after closing, the purchaser was denied rezoning and annexation by the applicable authorities, ND would have the right to purchase the Property for $7,750,000.00, plus costs, expenses, and interest.

The Court authorized the sale for $7,200,000.00 to Westplan and, on April 28, 2017, the Court entered an order approving the sale.   The sale to Accent was consummated on May 1, 2017. The Buyback Option was set to expire on August 20, 2018 at 5:00 PM and the amount of $9,269,212.32 was necessary to exercise the Buyback Option.   Mr. Thakkar, the manager of ND, believed the Property was worth more than the buy-back price.    ND obtained financing from two sources, Rass and Norcross Hospitality, to exercise the option before the deadline.   ND paid the specified price to exercise the option, and Accent conveyed a quit claim deed to ND on August 22, 2018, which was recorded on August 24, 2018.

4

On December 11, 2018, the Court appointed Mr. Glass as chapter 11 trustee in the ND case ("Trustee").   In April 2019, the Trustee sought to sell the Property and employed CBRE, Inc. ("CBRE") as real estate broker.   CBRE marketed the Property for sale and received twelve offers. The Trustee executed an agreement with Habersham Partners, LLC ("Habersham") to buy the Property.   The Trustee filed a motion to sell the Property free and clear of all liens, claims, interests and encumbrances.   After an auction, the Court ultimately approved a sale of the Property to Rass for $12,795,000.

On January 12, 2021, the Complaint was filed, ostensibly in the name of ND as a "Shell Debtor" "through its Interest Holders" ("Plaintiff").[1]   Plaintiff contends the right to buy back the Property was given to ND, not the debtor in possession, and was not property of the estate and, once the Buyback Option was exercised, the estate did not have an ownership interest in the Property.   The Complaint seeks a declaratory judgment the estate had no legal interest in the Property and Rass acquired no legal interest in the Property from the estate.   In support of its claims, the Complaint referrers to abandonment, to illustrate the difference between the debtor and the estate.   Plaintiff also contends the Buyback Option merged with the deed.   Alternatively, Plaintiff seeks an order requiring the estate to pay Mr. Thakkar and/or his insiders or affiliates $100,000.00 with applicable interest.

b.   Facts as Demonstrated in the Record

The facts set out in the Complaint are true, but incomplete.   The full facts taking into account matters subject to judicial notice are as follows.   ND is owned 50% by Niloy Thakkar and 50% by Rohan Thakkar; it is managed by Niloy's and Rohan's father, Chuck Thakkar.

---

1 "Interest Holders" are not identified in the Complaint.   Mr. Glass seeks dismissal on the ground Mr. Thakkar does not have standing to bring the complaint.   The complaint does not state clearly who is bringing it.   The Court has decided to dismiss the case for other reasons without reaching the standing issue.

ND's schedules reflect it owned the Property, which consisted of a shopping center and office suites.   In April 2017, as a deadline to pay its secured creditor neared, ND sought to sell the Property to Westplan or its assignee for $7 million free and clear of all liens, claims and encumbrances.   The proposal contemplated that ND would have the right to develop the retail, office, and hotel portion of the Property under certain circumstances while Westplan would develop the residential portion of the Property.   Paragraph 26 of the contract provided ND the right to buyback all or a portion of the Property upon the occurrence of certain conditions, such as the failure of the City of Smyrna to rezone the Property to allow for the planned development.   At the Court's direction, the parties conducted an auction, which resulted in an offer from Westplan of $7.2 million, otherwise in accordance with the proposed contract, and from Bay Point Capital Partners, LP ("Bay Point") of $7.3 million, otherwise in accordance with the proposed Westplan contract but without the repurchase option for the Property.

The Court held an evidentiary hearing on the motion to sell at which Mr. Thakkar testified to ND's desire to retain the right to repurchase the property.   He argued the Westplan sale with the Buyback Option was a better offer for ND.   The Court found that the Buyback Option could have significant value to the estate if the Property was rezoned to accommodate residential and hotel use.   Since such value would inure primarily to the equity holders, the Court ordered Mr. Thakkar, or a non-debtor party, to contribute $100,000 at the closing such that the total proceeds paid to Bay Point would be $7,300,000, the amount of its credit bid.   On April 28, 2017, the Court authorized the sale of the Property to Westplan.

Westplan assigned the right to purchase the Property to Accent.   The sale closed and Accent applied for rezoning, but the rezoning request was denied.   In a letter dated May 22, 2018, Accent notified ND:

[I]n accordance with the second paragraph of Paragraph 26 of the Contract, the

> Seller has until August 20, 2018 (ninety (90) days from the date the Purchaser was
> denied the rezoning and annexation) to repurchase the Property.   As determined in
> accordance with Paragraph 26, the price for the Property is $9,269,212.32
> calculated as follows: $ 7,750,000.00 plus $1,519,212.33 (15% interest
> compounded annually from Purchaser's closing on the Property - the outside date
> of August 20, 2018 was used to calculate the interest, if Seller closes prior to that
> date, then the interest amount will [b]e reduced accordingly).   Please note that if
> Seller fails to close and acquire the Property by August 20, 2018, then Seller's
> repurchase right shall become automatically null and void and Seller shall no longer
> have a right to purchase or any interest in the Property.

(Case No. 15-58443 Doc. No. 137, Ex 3, part 4.)   ND did not have sufficient funds to repurchase the Property at that time and, without notifying or consulting with ND's bankruptcy counsel, ND sought financing to exercise the repurchase option.

ND ultimately succeeded in obtaining a loan from Rass and executed a promissory note in the principal amount of $4,100,000 on August 20, 2018, and a deed to secure debt in favor of Rass on the Property was recorded in the Cobb County, Georgia property records.   ND was still short of funds.   Mr. Thakkar turned to Norcross Hospitality, a company of which he was manager and his children Niloy and Rohan are the majority owners.   On August 20, 2018, ND executed a promissory note to Norcross Hospitality in the principal amount of $5,169,212.32.   On August 20, 2018, ND used the funds it obtained from Rass and Norcross Hospitality to exercise the Buyback Option and acquire the Property from Accent for $9,269,212.32.   No Court authority was sought or obtained to borrow funds or to acquire the Property.

Meanwhile, on August 8, 2018, ND filed a complaint against Westplan and Accent alleging breach of contract, initiating Adversary Proceeding No. 18-5193.   The allegations in the complaint are detailed below.   Westplan filed a motion to dismiss the complaint, and the Court learned the Property had been repurchased by ND while reviewing that filing.   The Court issued an Order to Show Cause on October 10, 2018 directing ND and its counsel to appear and explain to the Court the circumstances of the alleged repurchase.   ND filed a response on October 25,

2018 stating "[t]he Property has no equity and in order for any value to be realized zoning and development is required.   While [ND] is in bankruptcy, it believes that it will not be able to obtain the financing and investment necessary to develop the Property.   Debtor would propose to transfer the Property and the debt subject to approval."   (Case No. 15-58440 Doc. No. 898.) Alternatively, ND requested an order authorizing the post-petition financing with Rass and Norcross Hospitality pursuant to section 364 of the Bankruptcy Code.   On November 11, 2018, ND filed a Motion Requesting Entry of Order (1) Transferring or Assigning Real Property and Authorizing Assumption of Debt Obligations, or Alternatively, (2) Authorizing Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code Nunc Pro Tunc.   The Court did not immediately hear the motion; instead, after notice and a hearing, it appointed a chapter 11 trustee.

Mr. Glass, as Chapter 11 Trustee, sought to sell the Property ("Second Sale").   The Trustee engaged CBRE as real estate broker to market the Property, and CBRE received a dozen offers from third parties interested in purchasing the Property.   Niloy and Rohan Thakkar objected to the motion to sell and sought dismissal of the case for cause.   The Court held a hearing on July 2, 2019, at which it considered testimony from the Trustee and from John Haynes of CBRE.   On July 3, 2019, the Court approved the bid procedures and Habersham as the stalking horse bidder. Mr. Thakkar and Niloy and Rohan Thakkar filed renewed objections to the bid procedures and sale, and the Trustee filed additional declarations in support of the sale.

The Trustee conducted an auction on July 31, 2019, and the Court held a hearing on the sale motion on August 2, 2019.   At the hearing, the objections by Rass, Niloy and Rohan Thakkar, and Mr. Thakkar were withdrawn.   The Court approved the sale of the Property to Rass for $12,795,000, including a credit bid in the amount of $4,100,000 (the principal amount of Rass's post-petition loan to ND) (the "Second Sale").   The Trustee entered an order approving the Second Sale (the "Second Sale Order"), which provided the Court had jurisdiction "over property of

Nilhan Developers' estate, including the Property to be sold" and the Court specifically found "[t]he Property is property of Nilhan Developers' estate and title thereto is vested in Nilhan Developers' estate."   (Case No. 15-58440 Doc. No. 1171 at 5 & 6.)   Further, the Second Sale Order provided the Second Sale was "in the best interests of Nilhan Developers' estate."   Id. at 6 & 8.   The Second Sale Order specified the Second Sale was "free and clear of all liens, claims, encumbrances of record, interests, mortgages and/or security deeds[.]"   Id. at 10.   The Court further found Rass was a good faith purchaser within the meaning of section 363(m) and was entitled to the protections of section 363(m).   Id. at 11.   The sale closed on August 15, 2019, and the Trustee received net sales proceeds in the amount of $8,450,834.28 (Case No. 15-58440 Doc. No. 1185).

To facilitate the administration of the estate and resolve the pending adversary proceeding regarding the contract between Westplan and ND, the Trustee filed a motion to approve a settlement with Westplan and Accent, the Thakkars (Mr. Thakkar, Niloy Thakkar, and Saloni Thakkar), ND, and the Trustee, pursuant to which the parties agreed to broad, reciprocal releases. The Court held a hearing on the settlement motion on September 12, 2019.   No objections were filed, and no parties appeared to oppose the motion.   Accordingly, the Court entered an order granting the motion to approve settlement on September 13, 2019 (Case No. 15-58440 Doc. No. 1209) ("Westplan Settlement Agreement").

Litigation continued over repayment of the amounts advanced to ND to exercise the Buyback Option.   The Court approved a settlement allowing Rass an administrative expense claim in the amount of $404,260 for interest accrued at 10 percent on the principal amount of $4,100,000 from August 20, 2018 through August 16, 2019.   This interest payment, together with Rass's credit bid, satisfied Rass's claim.   Norcross Hospitality filed a motion seeking *nunc pro tunc* approval and administrative expense treatment of the note executed by ND in favor of

Norcross Hospitality.   The papers filed in support of Norcross Hospitality's request for payment generally argue that the loan to ND was for the benefit of the estate and that Norcross Hospitality made a substantial contribution to the ND case by loaning it money to exercise the option.   The position is described in detail below.   After an evidentiary hearing, the Court directed that Norcross Hospitality's principal claim of $5,169,212.32 be paid to the extent funds are available after all creditors are paid.   Norcross Hospitality appealed the Court's order.

The Court confirmed the Trustee's Sixth Amended Plan on December 8, 2020 (the "Plan") (Case No. 15-58443 Doc. No. 227), and the Plan became effective on December 23, 2020.   The Plan provided for immediate payment to certain creditors, and alternative means of distribution to Nilhan Financial (on account of its allowed claim for $2,300,000) and Norcross Hospitality depending on the outcome of Norcross Hospitality's appeal of this Court's order regarding its entitlement to payment.   The Plan also provided for the release of the Trustee for actions that pre-dated the effective date.

Well after the sale of the Property and resolution of Norcross Hospitality's alleged claim, and after the effective date of the Plan, Plaintiff filed this Complaint on January 12, 2021 against the Trustee and Rass.   Plaintiff contends for the first time that title to the Property vested with ND, not the estate, and the sale to Rass is not valid.

The Trustee and Rass filed the Motions seeking dismissal of the Complaint.   The Trustee and Rass argue the Complaint should be dismissed for failure to state a claim because: 1) the Buyback Option belonged to the estate and there was no distinction between ND and the Debtor-in-possession when the option was exercised, 2) the sale process confirmed the Property was property of the estate, 3) Plaintiff's abandonment argument is flawed because the estate never abandoned the Property or the option, 4) Mr. Thakkar's failure to timely file an administrative claim bars his request for payment now, and 5) final orders approving the Second Sale and

substantial consummation of the Plan result in res judicata, collateral estoppel, and waiver to bar the claims.   Rass argues, alternatively, that the Complaint should be dismissed for lack of subject matter jurisdiction because the adversary proceeding is not related to a case under Title 11 as the Property was sold to a third-party and is no longer subject to the administration of this Court. Finally, Rass contends that, even if the Court has jurisdiction, it should abstain from hearing the adversary proceeding.

Plaintiff failed to respond to the Motions.   Consequently, the Motions are deemed unopposed pursuant to Local Rule 7007-1(c).

### III.    ANALYSIS

Viewing the allegations in the Complaint in the light most favorable to the Plaintiff, the Complaint falls short of plausibly demonstrating the Defendants' alleged liability.

### A.   Estoppel

More than a year after the Second Sale was approved and closed, Plaintiff contends for the first time that the Buyback Option and the reacquired Property belonged to a separate debtor entity (a Shell Debtor), not the estate.   Defendants contend Plaintiff's position is inconsistent with positions taken in the bankruptcy case, other prior proceedings, and state court litigation and is barred by res judicata, collateral estoppel, judicial estoppel, waiver/release, and/or section 363(m).

### 1.   Res Judicata/Collateral Estoppel

Rass and the Trustee both contend the Complaint fails to state a claim for relief because the claims raised in the Complaint are barred by various principles of estoppel including res judicata and collateral estoppel.   These related doctrines prevent the relitigation of an issue already litigated and determined by a valid and final judgment in another proceeding.   United States v. Irvin, 787 F.2d 1506, 1515 (11th Cir. 1986).   Their purposes are to protect "litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote]

judicial economy by preventing needless litigation." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Though the doctrines are related, they are distinct concepts. Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499 , 1501 (11th Cir. 1984); see also Sterling Factors, Inc. v. Whelan (In re Whelan), 236 B.R. 495, 505 (Bankr. N.D. Ga. 1999) ("There are significant differences between these two doctrines."). Res judicata, or claim preclusion, "bars a second suit involving the same parties and the same causes of action on all matters that were part of the first suit and all issues that could have been litigated." Id. (citing Johnson v. United States, 576 F.2d 606, 611 (5th Cir. 1978)). Collateral estoppel, or issue preclusion, "precludes relitigation only of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action." AVCO Corp., 736 F.2d at 1501; Johnson, 576 F.2d at 611. Thus "[w]hereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." Brown v. Felsen, 442 U.S. 127, 139 n.10 (1979).

Closely related to these doctrines is the doctrine of "law of the case." "Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997) (quoting Williamsburg Wax Museum v. Historic Figures, 810 F.2d 243, 250 (D.C. Cir. 1987)). Law of the case ensures "an issue decided at one stage of a case is binding at later stages of the same case." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1288-89 (11th Cir. 2009) (citation omitted). As explained by the Eleventh Circuit, this is a

> rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it *must,* and which

it itself will, normally, apply to the same issues in subsequent proceedings in the same case.

In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (quoting Morrow v. Dillard, 580 F.2d 1284, 1289 (5th Cir. 1978)) (additional citation omitted).   Law of the case thus is a form of issue preclusion, but it differs from collateral estoppel "in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases."   Id. Unlike the tests for res judicata and collateral estoppel, the law of the case doctrine is an "amorphous concept."   In re Pilgrim's Pride Corp., 442 B.R. 522, 530 (Bankr. N.D. Tex. 2010).

In raising this issue before the Court, the parties make several references to both collateral estoppel and res judicata.  Issue preclusion is the more appropriate doctrine of preclusion to consider with regard to the binding effect of the findings in the Second Sale Order and Confirmation Order because, while the issues overlap, the cause of action in this adversary proceeding is not the same as that presented in connection with the Second Sale or Confirmation Order.

Whether to apply collateral estoppel or the more amorphous concept of law of the case to prior orders issued during the same bankruptcy case is not well settled.   Some courts have applied collateral estoppel to bar litigation of issues previously decided in the main bankruptcy case.   For example, In re Saraland, LLLP, 2019 WL 1786015, at *10 (Bankr. S.D. Ga. Mar. 30, 2019), aff'd, 2019 WL 4899751 (S.D. Ga. Oct. 4, 2019), aff'd sub nom. In re Boudreaux, 828 F. App'x 643 (11th Cir. 2020), the Bankruptcy Court recounted numerous occasions throughout the bankruptcy proceeding where it had addressed the same allegations of fraud, misappropriation, or misfeasance raised in the complaint and concluded the complaint was barred by the doctrine of collateral estoppel.   See also In re All Am. Semiconductor, Inc., 427 B.R. 559 (Bankr. S.D. Fla. 2010) (holding prior order of bankruptcy court approving fees on final basis entitled to preclusive effect).

Other courts take the view that an adversary proceeding does not constitute a separate "case" from the main bankruptcy case and, therefore, law of the case should apply.   See Pilgrim's Pride Corp., 442 B.R. at 530; see also Bordeau Brothers, Inc. v. Montagne (In re Montagne), 2010 WL 271347, *5–6 (Bankr. D. Vt. Jan. 22, 2010); In re Winstar Communications, Inc., 435 B.R. 33 (Bankr. D. Del. 2010), aff'd, 2013 WL 6053838 (D. Del. 2013), aff'd, 591 Fed. Appx. 58 (3d Cir. 2015) (law of the case doctrine applied to prior decision regarding core jurisdiction).   Regardless of whether this adversary proceeding is considered a separate case the outcome is the same—issue preclusion is appropriate, even under the stricter requirements of collateral estoppel, and Plaintiff is barred from revisiting the Court's prior orders.

To determine if collateral estoppel applies, the bankruptcy court applies the law of the court issuing the prior judgment.   In re St. Laurent, 991 F.2d 672, 675-76 (11th Cir. 1993); In re Brownlee, 83 B.R. 836, 838 (Bankr. N.D. Ga. 1988); see also Restatement (Second) of Judgments § 87 (1982).   The prior judgments—the Second Sale Order and Confirmation Order—were both issued by this Court, a federal court, and therefore, federal law will determine whether collateral estoppel bars relitigation of whether the Property was property of the estate at the time of the Second Sale.

Under federal law, collateral estoppel applies when the following elements are met: 1) the issue in the prior action and the issue in the present action are identical; 2) the issue was actually litigated in the prior action; 3) the determination of the issue in the prior action was a critical and necessary part of the judgment in the litigation; and 4) the burden of persuasion in the later proceeding is not significantly heavier than the burden of persuasion in the initial action.   Bush v. Balfour (In re Bush), 62 F.3d 1319, 1322 (11th Cir. 1995); In re Moore-McKinney, 603 B.R. 855, 865 (Bankr. N.D. Ga. 2019).   The Court will consider whether these factors apply to both of its prior orders.

14

As to the Second Sale Order, there is an identity of issues.   Plaintiff seeks to litigate the same issue—whether the Property was property of the estate—that was previously at issue when considering the Second Sale.   The Court specifically found in the Second Sale Order that the Property "is property of Nilhan Developers' estate and title thereto is vested in Nilhan Developers' estate", and that the sale of the Property was in the best interests of Debtor's estate, creditors, and equity holders.   (Case No. 15-58440, Doc. No. 1171 at 4, 6, 7-8.)

The question of whether the Property was property of the estate was actually and finally litigated when the Court approved the Second Sale, and the parties had a full and fair opportunity to litigate the issue.   In general, "when a question of fact is . . . submitted to the trier of fact for its determination, and is determined, that question of fact has been actually litigated."   In re Williams, 282 B.R. 267, 272 (Bankr. N.D. Ga. 2002) (internal quotation marks and citation omitted).

Plaintiff does not contend that it did not receive notice of the Second Sale, nor does it claim it was afforded less than a full right to participate in the sales process in ND's bankruptcy case. In fact, the Thakkars received notice about the bid procedures and the Trustee's motion regarding the Second Sale and participated in the hearings about the Second Sale.   They were represented by counsel—Mr. Thakkar by one attorney and Niloy and Rohan Thakkar by another, both of whom are competent and capable attorneys well versed in bankruptcy matters and bankruptcy sales.   The Thakkars filed objections to the Trustee's proposed bid procedures and the Second Sale and responses to the Trustee's papers, and the Thakkars participated in the hearing on the bid procedures and sale hearing.   The Court considered the objections at a hearing on July 2, 2019, at which it ultimately approved the bid procedures and Habersham as the stalking horse bidder.

Mr. Thakkar and Niloy and Rohan Thakkar then filed renewed objections to the bid procedures and sale.   Niloy and Rohan Thakkar stated in their objection that the Property "is the

primary asset of Nilhan Developers" and its sale was not necessary to pay the claims (Case No. 15-58440 Doc. No. 1123).   Their objection never alleged the Property was not property of the estate, but rather sought an alternative solution rather than paying creditors through a sale by auction.   Similarly, Mr. Thakkar never suggested the Property was not property of the estate.

At the hearing on the sale motion on August 2, 2019, the objections by Rass, Niloy and Rohan Thakkar, and Mr. Thakkar were withdrawn, after which the Court approved the Second Sale.   The Thakkars had a fair opportunity procedurally, substantively, and evidentially to contest the issue and did in fact raise several objections to the bid procedures and Second Sale. Ultimately, though, they withdrew their objections to the Second Sale and the Court approved the Second Sale.   The Second Sale Order was entered on August 5, 2019.   The sale closed on August 15, 2019, and the Trustee received net sales proceeds in the amount of $8,450,834.28.   The Second Sale Order was a final order subject to appeal.   No motion to reconsider was filed, no appeal was taken, and no party otherwise moved to have the Second Sale Order set aside.   The Court finds that the issue of whether the Property was property of the estate was actually litigated in ND's bankruptcy case.

Moreover, determining the Property was property of the estate was a critical and necessary part of the Court's decision in the Second Sale Order.   It was an important element of the Court's determination and not a peripheral issue—the Court considered and authorized the Second Sale because the Property was property of the estate.   Finally, the burden of persuasion in this case is not significantly heavier than the burden of persuasion in the initial action—it is the same.

The Court finds the elements of collateral estoppel are met here as the issue decided in the Second Sale Order is identical to the issue in this case, the question of whether the Property was property of the estate was actually and finally litigated in the bankruptcy case, the adjudication was essential to the earlier action, and the burden of persuasion is the same in this adversary

proceeding as in the main bankruptcy case.   The issues raised in the Complaint have already been decided in the Second Sale Order, and Plaintiff did not appeal the order when the opportunity existed.   Accordingly, the Court's prior determination in the Second Sale Order will be given preclusive effect.

The Confirmation Order will also be given preclusive effect, and Plaintiff is barred from questioning whether the Property was property of the estate because such action constitutes a collateral attack on the confirmed plan.   It is established law that a confirmation order satisfies "the requirements of a judgment that can be given [preclusive] effect."   In re Optical Techs., Inc., 425 F.3d 1294, 1300 (11th Cir. 2005) (citing Justice Oaks II, Ltd., 898 F.2d at 1549).   The Eleventh Circuit has explained that to determine whether to preclude a plaintiff from litigating claims advanced in an adversary proceeding, the court "must establish whether any or all of those claims were actually made, *or could have been made,* in their objection to confirmation."   Justice Oaks II, Ltd., 898 F.2d at 1552 (citations omitted) (emphasis in original); see also Optical Techs., Inc., 425 F.3d at 1301 ("appellants cannot raise objections to the actual terms of the Fourth Amended Plan or the confirmation order, as these were deemed waived when they failed to object to confirmation").   As one court explained, "once a bankruptcy plan is confirmed, an equity security holder cannot assert rights that are inconsistent with its provisions."   Apex Mgmt. Corp. v. WSR Corp., 225 B.R. 640, 646 (N.D. Ill. 1998).

The issue raised in the Complaint is the same as the one raised and actually litigated at confirmation.   The Plan provides the Property was sold by the Trustee and that the proceeds of the sale are property of Debtor's estate (Case No. 15-58443 Doc. No. 225 at §§ 1.2, 1.3(A)).   The Plan provides for the distribution of the sale proceeds as property of the estate.

Plaintiff had a full opportunity to object during the confirmation process but failed to do so.   The Trustee sought to bring ND's case to a conclusion through a plan and, after several

17

amendments, he filed a Fourth Amended Plan of Liquidation (Case No. 15-58443 Doc. No. 190). ND's equity holders and Norcross Hospitality—which is majority owned by ND's equity holders, Niloy and Rohan Thakkar—filed objections to the Plan and disclosure statement (Case No. 15-58443 Docs. Nos. 185 & 204) and responded to a pleading filed by Nilhan Financial in support of the Plan (Case No. 15-58443 Doc. No. 209).   The objections did not contend the Property was not property of the estate but rather argued how the estate funds generated from the sale of the Property should be applied to Nilhan Financial's and Norcross Hospitality's claims.   The objections also challenged the plan agent's role in holding the proceeds from the Second Sale of the Property; they all assumed the Property was property of the estate when sold by the Trustee.   At no point did anyone contend otherwise.   After considering the objections at hearings on September 10, 2020, November 12, 2020, and December 8, 2020, none of which contended the Property was not property of the estate, the Court instructed the Trustee to amend the plan to address other issues. The Court subsequently confirmed the Plan.   The Court concludes the issue raised here was actually and finally litigated when the plan was confirmed.

The determination that the Property was property of the estate in the confirmation proceeding was a critical and necessary part of confirming the Trustee's Plan.   "Determination of the ownership of assets is at the core of the bankruptcy process, and particularly the creation of a bankruptcy reorganization plan[.]"   Adelphia Recovery Tr. v. Goldman, Sachs & Co., 748 F.3d 110, 118 (2d Cir. 2014).   Determining the Property, and the proceeds received therefrom, constituted property of the estate was a critical component of confirmation, because the purpose of the Plan was to distribute property of the estate to creditors.   Finally, the burden of persuasion in the later proceeding is not significantly heavier than the burden of persuasion in the initial action—it is the same.

ND's equity holders are bound by the terms of the Plan because the issue raised in the Complaint is identical to the issue decided in the Confirmation Order, the question of whether the Property was property of the estate was actually and finally litigated in the confirmation process, the adjudication was essential to confirming the Plan, and the burden of persuasion is the same in this adversary proceeding as in the main bankruptcy case.   Accordingly, the Court's prior determination in the Confirmation Order that the Property was property of the estate will be given preclusive effect.   For the foregoing reasons, Plaintiff is barred from collaterally attacking the Court's prior orders finding that the Property was property of the estate.

### 2.  Judicial estoppel

Defendants contend the claims in the Complaint are also barred by judicial estoppel. Judicial estoppel is an equitable doctrine that prevents a party from taking a position in current litigation that contradicts a position taken by the party in prior litigation.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).   The doctrine "is intended to protect courts against parties who seek to manipulate the judicial process by changing their legal positions to suit the exigencies of the moment."  Slater v. U.S. Steel Corp., 871 F.3d 1174, 1176 (11th Cir. 2017).  In New Hampshire v. Maine, the Court explained that under the judicial estoppel doctrine, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  532 U.S. at 749 (citation omitted).   As stated by another court, judicial estoppel is a flexible equitable doctrine that protects the courts from being "manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."  Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 527 (7th Cir. 1999) (citations omitted).

In determining whether judicial estoppel applies, the Eleventh Circuit employs a two-part

test that considers whether: (1) the inconsistent position was made under oath in a separate proceeding, and (2) the inconsistent positions were "calculated to make a mockery of the judicial system." Barger v. City of Cartersville, 348 F.3d 1289, 1293-94 (11th Cir. 2003) (quoting Salomon Smith Barney, Inc. v. Harvey, 260 F.3d 1302, 1308 (11th Cir. 2001)).   The first prong requires the prior inconsistent position to be made under oath in a separate proceeding. Taking a position in a written motion and in argument on that motion may fairly be analogized to taking a position "under oath" for purposes of judicial estoppel.   Valentine-Johnson v. Roche, 386 F.3d 800, 811–812 (6th Cir. 2004).   The doctrine can be applied to bar inconsistent positions in the same litigation.   See New Hampshire, 532 U.S. at 749 (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase") (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)).

The second prong requires that the inconsistency be intentional rather than inadvertent. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 1282, 1286-87 (11th Cir. 2002).   "[I]n considering whether to apply judicial estoppel a court must focus on the conduct of the party to be estopped[.]"   Adelphia Recovery Trust v. HSBC Bank USA, N.A., 634 F.3d 678, 698 (2d Cir. 2011).   The court must consider both the party's actions—"whether he made inconsistent statements—and his motive—whether he intended to make a mockery of the judicial system."   Slater v. U.S. Steel Corp., 871 F.3d at 1181.   An estoped party's contradiction must be intentional, but such intent may be inferred from the record.   Burnes, 291 F.3d at 1285-87; Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010).   While "there may be instances in which the plaintiff's intent is not clear from the pleadings," there are other cases in which intent is evident from the record.   Korman v. Iglesias, 778 F. App'x 680, 682 (11th Cir. 2019).   For example, in Korman, the court concluded that plaintiff's "assertion of sole authorship on the face of [the] complaint, in light of her previous allegations," was "the epitome of ''the old

sporting theory of justice' or the use of the federal courts as a forum for testing alternate legal theories *seriatim*.'" Id. (quoting Fla. Evergreen Foliage v. E.I. DuPont de Nemours & Co., 470 F.3d 1036, 1042 (11th Cir. 2006)).   The plaintiff's affirmative change of position plainly reflected "cold manipulation and not an unthinking or confused blunder." Id. (citing Slater, 871 F.3d at 1181) (additional citations omitted).   The court stated discovery was not needed, and the lower court properly considered documents attached to a motion to dismiss that were central to the plaintiff's claims and undisputed without converting the motion to dismiss into a motion for summary judgment.   Korman, 778 F. App'x at 682.

Because the doctrine of judicial estoppel protects the integrity of the judicial system rather than the litigants, privity or detrimental reliance need not be shown.   Burnes, 291 F.3d at 1286; see also 18 James Wm. Moore et al., Moore's Federal Practice, ¶ 134.33[1] ("The majority rule is that a party is not required to have been a party to the prior proceeding to be able to invoke judicial estoppel.").   Thus, judicial estoppel "may be raised by any party, regardless of whether the party was prejudiced by the inconsistency, or by the court on its own motion."   See Grochocinski v. Mayer Brown Rowe & Maw, LLP, 719 F.3d 785, 795 (7th Cir. 2013); In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990).   Some courts require the plaintiff asserting an inconsistent position to have succeeded in persuading court to accept its earlier position.   See Audio Technica U.S., Inc. v. United States, 963 F.3d 569, 575 (6th Cir. 2020).   A court accepts a position when it adopts or relies on the representation.   See Ahrens v. Perot Sys. Corp., 205 F.3d 831, 835–836 (5th Cir. 2000).   The Eleventh Circuit does not require the court to have accepted the previous position. Slater, 871 F.3d at 1181-82.

A position that a debtor successfully asserts in gaining approval of a bankruptcy sale or in confirming a plan may judicially estop the debtor from asserting a contrary position in later litigation.   For example, in Adelphia Recovery Trust v. Goldman, 748 F.3d 110, a recovery trust

filed a fraudulent transfer action asserting that an account from which a transfer was made was owned by the parent debtor, rather than a subsidiary debtor.    The trust's position was inconsistent with the position taken by its predecessor in interest in the plan confirmation process that the bank account belonged to the subsidiary.    The ownership of the account was significant in the confirmation litigation, and the bankruptcy court had accepted the predecessor's position in confirming the plan.    The Second Circuit concluded that the change of position was a deliberate attempt to meet the exigencies of the moment and the plaintiff was judicially estopped from pursuing the claim to reattribute ownership.    The court noted: "when, as here, the assets in question were claimed by other parties during the bankruptcy proceeding without objection, a debtor's subsequent claim to those assets in a different proceeding must be seen as inconsistent with its prior silence. . . . Any other holding would encourage sharp practices, involving strategic denials or affirmations of asset ownership timed to the legal exigencies of the moment, precisely what the doctrine is intended to prevent."   Id. at 118–19 (citation omitted); see also Adelphia Recovery Trust v. HSBC, 634 F.3d 678 (silence of attorney for debtor-in-possession at sale hearing resulted in judicial estoppel where the silence induced the court to approve the sale under the false belief that no party other than those present and consenting had an interest in liens).

The allegations in the Complaint are clearly inconsistent and directly contradict positions asserted in prior proceedings before this Court.[2]    For example, in the complaint against Westplan which initiated adversary proceeding 18-5193, ND argued the sale contract with Westplan provided certain rights to ND including the option to repurchase the entire Property in the event rezoning was denied.    ND alleged the Buyback Option "provided additional value to [ND] as it

---

2 Rass asserts the allegations in the Complaint are also inconsistent with the position asserted by Norcross Hospitality in litigation with Rass in Cobb County Superior Court filed October 15, 2020.    The Cobb County complaint is attached to Rass's motion to dismiss and no objection to its authenticity has been stated.    The complaint presumes the Property was Property sold by the Trustee, but argues the purchase was actually for the benefit of "The Emerson Partnership."

enhanced the bankruptcy estate's financial position above and beyond an outright sale of the Property[.]"  (AP No. 18-5193 Doc. No. 1 at 3.)   ND alleged Accent took actions that rendered the Buyback Option worthless and nullified "any potential value to the estate" and "irreparably harmed the value of the Property."   Id. at 5.   The allegations in that complaint—that the Buyback Option was valuable to the estate—are inconsistent with the position ND now takes for the first time that the Buyback Option was lost through merger.

The arguments in the Complaint are also contrary to those ND put forth in its bankruptcy case.   For example, ND filed a Motion Requesting Entry of Order (1) Transferring or Assigning Real Property and Authorizing Assumption of Debt Obligations, or Alternatively, (2) Authorizing Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code Nunc Pro Tunc (Case No. 15-58440 Doc. No. 904).   In the motion, ND stated that the financing received from Rass and Norcross Hospitality "led to reacquisition of the Property which is beneficial to the estate."   Id. at ¶ 28 (emphasis added).   In the alternative, ND proposed transferring the Property and the related obligations from the estate to Norcross Hospitality, which would not have been necessary had ND believed the Property was not property of the estate.   At no time did ND take the position it was acting outside the bankruptcy case.

The position taken in this adversary proceeding is also directly contradictory to that taken by Norcross Hospitality, which is majority owned by Niloy and Rohan Thakkar who filed the Complaint in ND's name.   Norcross Hospitality filed a Motion to Pay Administrative Expense or, in the Alternative, for Nunc Pro Tunc Approval of Post-Petition Financing (Case No. 15-58440 Doc. No. 1182) in which it alleged it was a creditor "of the Estate of Nilhan Developers, LLC." Throughout the motion, Norcross Hospitality argued the financing it provided was a cost of preserving the estate and the funds were for the benefit of the estate.   The motion stated Norcross Hospitality advanced over $5 million to ND "to enable Nilhan Developers to exercise a court-

approved option to retain certain real property which ultimately resulted in significant value for this Estate."   Norcross Hospitality stated the sale "provided Nilhan Developers with an option to repurchase the Property.   This term was negotiated and obtained by Nilhan Developers in order to preserve the value of this Property, which was considered to be extremely valuable due to its redevelopment potential, <u>for the future benefit of the Bankruptcy Estate</u> while, at the same time, generating funds required to satisfy the then immediate problem of paying Bay Point."   <u>Id.</u> at 4 (emphasis added).   Further, "[t]he acquisition of the Property by Nilhan Developers did not harm any creditor or party in interest and, indeed, <u>preserved this Property for the benefit of the Bankruptcy Estate</u>."   <u>Id.</u> at 5 (emphasis added).   The motion contended the option "preserved the value of the Property for the Nilhan Developers Bankruptcy Estate," and "the Property has been sold at significant benefit to the estates of the Debtors."   <u>Id.</u> at 6.   Norcross Hospitality "acknowledge[d] that <u>the option to purchase the Property was property of the estates of the Debtors</u>, the Property was not property of the estates of the Debtors after April 28, 2017, until the Property was reacquired by Nilhan Developers[.]"   <u>Id.</u> at 7 (emphasis added).   Finally, Norcross Hospitality contended the financing provided by Norcross Hospitality "benefited the estates of the Debtors by providing the necessary funds to enable Nilhan Developers to exercise the option to purchase the Property that was subsequently sold at a profit for the benefit of the estates of the Debtors."   <u>Id.</u> at 11.

At various hearings before the Court, Mr. Thakkar, ND's manager, argued ND was authorized to buy back the property and the reacquisition of the Property was beneficial to the estate.   At a hearing on June 23, 2020 on Norcross Hospitality's request for an administrative expense claim, Mr. Thakkar was asked, "Did you believe that entering into these transactions, the loan from Norcross Hospitality to Nilhan Developers, the loan from RASS to Nilhan Developers, did you believe that they were in the best interests of Nilhan Developers?"   Mr. Thakkar replied,

"Absolutely."   (Case No. 15-58443 Doc. No. 148 at 50.)   He stated, "we should have notified the Court as whatever we were doing was in the best interest of the estate[.]"   Id. at 51.   Counsel stated, "you've already testified that you believe that this was in the best interests of the Nilhan Developers estate," to which Mr. Thakkar responded, "That's correct."   Id. at 59.

In summation at the June 23 hearing, counsel for Norcross Hospitality argued, "The only reason there's money here to pay claims is because the option was exercised, the value of the property was preserved, and that property's ultimately sold at a significant profit to the estate to generate a return to creditors."   Id. at 77 (emphasis added).   He went on,

> Mr. Thakkar ensured that this property came back for the benefit of Nilhan Developers and its bankruptcy estate and its creditors.   The property was in fact transferred back to Nilhan Developers.   It went into the bankruptcy estate.   I was struck by a statement in Mr. DeBorde's brief where he took a quote from Mr. Thakkar that Mr. Thakkar said, 'Well, I thought I was doing a good thing for the estate.'   He didn't say for himself; he said for the estate.   And he was doing a good thing for the estate.   He was preserving the value of this property.

Id. at 79 (emphasis added).   Counsel concluded by arguing that Mr. Thakkar made sure "the bankruptcy estate got the benefit of that transaction.   There's no evidence of any effort for him to take that for himself. He did that for the estate as a manager of the estate, borrowed money on two fronts to do that, and exercised great effort to get that done.   And that has now benefitted the creditors and this estate."   Id. at 80.

As demonstrated by these statements, ND and its equity owners have consistently argued in its papers and arguments before the Court that ND, as the debtor in possession, reacquired the Property for the benefit of the bankruptcy estate.   ND has appeared before this Court many times, but it has never argued it reacquired the Property separate and apart from the bankruptcy estate.   To the contrary, ND, its manager, and its equity owners have all consistently argued ND retained the Buyback Option on behalf of the bankruptcy estate and exercised it on behalf of the estate for the benefit of the estate and its creditors.   In ruling on Norcross Hospitality's request

for administrative expense claim, the Court adopted and relied on the represented position the Property was property of the estate when it allowed Norcross Hospitality a claim against the estate. The representation that the Property was property of the estate was indispensable to the Court's willingness to enter the Second Sale Order.   The position taken in the Complaint is clearly inconsistent with the position ND and its equity have previously made to, and which was accepted by, the Court.   Accordingly, the first prong weighs in favor of applying judicial estoppel here.

Turning to the second prong, consideration of the party's actions and motive, Plaintiff's intent "to make a mockery of the judicial system" is evident.   Even accepting the allegations of the Complaint and all reasonable inferences therefrom, it is evident the inconsistent position is not inadvertent.   Plaintiff is represented by experienced counsel, just as ND and Mr. Thakkar have been throughout ND's bankruptcy proceedings.   No one has disputed the authenticity of ND's prior filings and Mr. Thakkar's testimony, all of which contend the estate retained the Buyback Option and the reacquired Property was property of the estate.   At no point did ND, its manager, or its equity holders argue the position Plaintiff now espouses.   The position Plaintiff takes now cannot be reconciled with the earlier position and seems calculated to meet the exigencies of the moment.   As in Korman, Plaintiff's intent is clear from the record, of which the Court has taken judicial notice.   Plaintiff's affirmative change of position reflects manipulation, rather than inadvertence.   Accordingly, the second factor also weighs in favor of applying judicial estoppel. Exercising its discretion, the Court finds Plaintiff is judicially estopped from asserting the claims in the Complaint regarding ownership of the Property.

### 3.   Waiver/Release

The Trustee contends that, even if Plaintiff is not estopped from asserting the claims, language in the Westplan Settlement Agreement and the Plan released any such claims against him.

The Trustee resolved the disputes between Westplan and the Thakkars in the Westplan Settlement Agreement which was between and among Westplan, Accent, Mr. Thakkar, Niloy Thakkar, Saloni Thakkar, ND and the Trustee.   The Westplan Settlement Agreement called for the dismissal of AP No. 18-5193 as well as six state court actions.   It also included broad, reciprocal releases.   A release is simply a discharge of a claim, right or privilege by one party against another.   Ogier v. Steele (In re Buckhead Oil Co.), 454 B.R. 242, 250 (Bankr. N.D. Ga. 2011).   Paragraph 4(c) of the Westplan Settlement Agreement provided that the Thakkar Releasing Parties (defined as Chuck, Saloni, and Niloy Thakkar and Nilhan Developers including employees, affiliates, spouses, children, relatives and others except, as to paragraph 4(c), Nilhan Developers is excluded):

> absolutely, forever, fully, and finally, release[,], waive[,] acquit[,], and discharge the Trustee, both personally and in his capacity as the Chapter 11 Trustee . . . from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, actions, causes of action, liabilities, defenses, liens, costs, and expenses of any nature . . . from the beginning of the world to the Effective Date of this Agreement[.]

The Court approved the settlement on September 13, 2019.   The effectiveness of the Westplan Settlement Agreement between the parties is not disputed.   Paragraph 4(c) does not apply to ND, but the Complaint was filed by ND through its Interest Holders, who are not specifically identified. The provision applies to the Thakkar Releasing Parties, including Chuck, Saloni, and Niloy Thakkar.   To the extent they are Interest Holders, they have released their claims against the Trustee.

The confirmed Plan also includes a broad release to the Trustee for all actions that pre-dated the Effective Date of the Plan.   Section 13.4a of Nilhan Developers Plan (Case No. 15-58443 Doc. No. 225) is an exculpation provision that releases parties, including the Trustee, "from, any claim, obligation, cause of action or liability . . . for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, . . . the Plan . . . or other occurrence taking place

before the Effective Date . . . provided, however, that nothing in the Plan shall release . . . claims due to . . . gross negligence or willful misconduct."   Section 13.4b is an injunction to bring such claims.

"Nothing in the Bankruptcy Code forbids . . . inclusion of an exculpation provision in a chapter 11 plan."   In re Astria Health, 623 B.R. 793, 798 (Bankr. E.D. Wash. 2021).   A majority of circuits—including the Eleventh Circuit—even permit involuntary releases of third-party, non-debtor claims if they meet certain conditions.   In re Seaside Engineering & Surveying, Inc., 780 F.3d 1070, 1077-1079 (11th Cir. 2015), cert. denied, ―― U.S. ――, 136 S.Ct. 109 (2015).   This, however, is not an instance in which a release would prohibit creditors from suing third parties. Instead, the release is of claims against the plan proponent, which, in this case, is the Trustee.

Plans can permissibly release liability, except from gross negligence or willful misconduct, for plan proponents.   See In re Lighthouse Lodge, LLC, No. 09-52610-RLE, 2010 Bankr. LEXIS 3663, at *20 (Bankr. N.D. Cal. Oct. 14, 2010); e.g., In re Yellowstone Mt. Club, LLC, 460 B.R. 254, 277 (Bankr. D. Mont. 2011).   Exculpation and indemnification clauses included in a plan protect plan proponents from claims, excluding claims relating to gross negligence, willful misconduct, or breach of fiduciary duty.   Such clauses are appropriate and necessary to discourage frivolous litigation.   In re Firstline Corp., 2007 WL 269086, at *3 (Bankr. M.D. Ga. Jan. 25, 2007); see also DJS Properties, L.P. v. Simplot, 397 B.R. 493, 503 (D. Idaho 2008) (Chapter 11 plan's exculpation clause, providing estate representative immunity for negligent acts, was proper).

The release in the Plan was appropriate and necessary to discourage litigation of the kind Plaintiff attempts to bring now.   The release covers claims such as those asserted because the claims arise out of the Trustee's/plan proponent's actions during the bankruptcy case in selling the Property and confirming the Plan.   Pursuant to the terms of Plan, these claims against the Trustee

28

were released and cannot be asserted now.

### 4.  Section 363(m)

Defendants further contend that Plaintiff's claims are barred by section 363(m) of the Bankruptcy Code.

The Second Sale Order included a finding Rass was a good faith purchaser, entitled to the protections of section 363(m).   (Case No. 15-58440 Doc. No. 1171 ¶ 6.)   The Second Sale Order expressly provided that the sale to Rass was in the best interest of the bankruptcy estate and ND, that the terms of the sale were fair and reasonable, that Rass had negotiated the transaction and was purchasing the assets in good faith within the meaning of section 363(m), and that the sale was afforded all of the protections provided by section 363(m) of the Bankruptcy Code.   The Trustee and Rass contend that because the Second Sale of the Property to Rass was consummated and no stay of the sale of the Property was requested or granted, the Thakkars' claims should be dismissed as moot pursuant to 363(m).

Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).   Section 363(m) has been interpreted "to render statutorily moot any appellate challenge to a sale that is both to a good faith purchaser, and not stayed." Mission Product Holdings, Inc. v. Old Cold, LLC (In re Old Cold, LLC), 879 F.3d 376, 383 (1st Cir. 2018). Section 363(m) is a powerful protection for good-faith purchasers because it limits appellate review of a consummated sale irrespective of the legal merits of the appeal.   See Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.), 414 F.3d 576 (6th Cir. 2005).   By providing reliability and finality, section 363(m) enhances

the value of the debtor's assets sold in bankruptcy—section 363(m) helps to maximize the value of a debtor's estate by encouraging the participation of buyers who are assured that a deal consummated with a debtor or bankruptcy trustee will not be modified by an appellate court after the sale transaction closes.    Weingarten Nostat, Inc. v. Serv. Merch. Co., 396 F.3d 737 (6th Cir. 2005).

The section applies to bar "reversal or modification on appeal", 11 U.S.C. § 363(m) (emphasis added), and only protects formal appeals of a sale order.    In re Gunboat Int'l, Ltd., 557 B.R. 410, 423 (Bankr. E.D.N.C. 2016).    Section 363(m) is therefore inapplicable when a sale order is attacked collaterally rather than on appeal.    See In re Edwards, 962 F.2d 641, 644 (7th Cir. 1992) ("section 363(m) merely protects the bona fide purchaser during the period—that is, pending appeal—in which he otherwise would have no protection against the rescission of a judicial order approving the sale, and does not address the scope of collateral relief.").    While section 363(m) does not in the strictest sense apply to bar collateral relief, it evidences the policy favoring protection of good faith purchasers of estate property.    In re Alan Gable Oil Dev. Co., 978 F.2d 1254 (4th Cir. 1992).    Sale orders in bankruptcy cases are accorded a high level of finality and, accordingly, "collateral attacks on sale orders should generally be prohibited."    In re CHC Indus., Inc., 389 B.R. 767, 774 (Bankr. M.D. Fla. 2007).

While section 363(m) does not by itself bar Plaintiff's claims, Plaintiff made no attempt to properly challenge the Second Sale Order.    Plaintiff could have sought reconsideration through appeal, but it did not, and its collateral attack is now barred by collateral estoppel, judicial estoppel, and waiver for the reasons stated above.

5.    Dismissal is Appropriate

The ownership of the Property has been determined by the Court in its Second Sale Order and the Plan and the claim of different ownership is barred by issue preclusion.    Moreover, the

very interest holders now claiming ND does not own the Property took the contrary position in numerous pleadings in this Court and are barred by judicial estoppel from taking a contrary position.   Finally, the claims in the Complaint against the Trustee have been released and waived by the "Interest Holders" in the Plan.   Accordingly, the Complaint is dismissed against both Defendants for the failure to state a claim.

### B.  The Buyback Option Was Property of the Estate

Even if the claims were not barred by the principles of estoppel discussed above, the Complaint fails to state a claim for relief because the Buyback Option and the Property are both property of the estate.

When a debtor files for bankruptcy protection, a bankruptcy estate is created.   Under section 541(a)(1) of the Bankruptcy Code, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a)(1).   Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case," 11 U.S.C. § 541(a)(6), and "[a]ny interest in property that the estate acquires after commencement of the case."   11 U.S.C. § 541(a)(7) (1994).   "Thus, the estate does not remain static."   In re Penick Pharm., Inc., 227 B.R. 229, 231–32 (Bankr. S.D.N.Y. 1998) (citations omitted).

The bankruptcy estate is a collection of property subject to certain liabilities that is separate from the debtor in possession or trustee.   7 Collier on Bankruptcy P 1101.01 (16th 2021).   "[I]t is the estate created by Section 541 that must be reckoned with whenever a case is commenced. A bankruptcy estate is a legal entity that exists separate and apart from the petitioning debtor."   In re Lucre, Inc., 434 B.R. 807, 832 n.57 (Bankr. W.D. Mich. 2010).   The bankruptcy estate itself, however, does not have the power to act.   The estate cannot in its own name sue or be sued,

employ professionals, sell assets, borrow funds or assume or reject executory contracts or unexpired leases. See 11 U.S.C. §§ 323(b), 327, 363, 364, 365 (vesting that capacity and those powers in the trustee) & §1107(a) (giving the debtor in possession rights and powers of a trustee).

The bankruptcy estate needs a debtor in possession or trustee to act on its behalf. Indian Harbor Ins. Co. v. Zucker for Liquidation Tr. of Capitol Bancorp Ltd., 860 F.3d 373, 378 (6th Cir. 2017) (citing Lucre, 434 B.R. at 832 n.57); see 11 U.S.C. §§ 521, 1106, 1107 (duties are imposed on the trustee, debtor and debtor in possession, not the estate)." The trustee or debtor in possession acts in the capacity as representative of the estate. See 11 U.S.C. §§ 323(a) & 1107(a). "As for the estate's trustee or debtor-in-possession, they are simply the representatives through which this fictional entity is able to act. An apt comparison is between a corporate entity and its officers and directors." Lucre, 434 B.R. at 832 n.57.

Upon the filing of a voluntary chapter 11 petition, a debtor automatically becomes "debtor in possession." See 11 U.S.C. § 1101(1) (1994). The definition of "debtor in possession" makes no distinction between the "debtor in possession" and the "debtor" as long as the debtor is a debtor in possession. The debtor in possession occupies the shoes of a bankruptcy trustee in every major way. 11 U.S.C. §§ 323(a) & 1107(a); United States v. Whiting Pools, Inc., 462 U.S. 198, 200 n. 3 (1983). As debtor in possession and *de jure* trustee, the debtor has certain statutory powers and is authorized to operate its business pursuant to section 1108 of the Bankruptcy Code. Pursuant to section 363(c)(1) of the Bankruptcy Code, as debtor in possession, the debtor is permitted to conduct its business in the ordinary course. As was the case outside of bankruptcy, the debtor acts through its directors and officers who continue to operate its business. Penick Pharm., 227 B.R. at 232–33.

As debtor in possession and *de jure* trustee, the debtor holds its powers in trust for the benefit of creditors. See Wolf v. Weinstein, 372 U.S. 633, 649 (1963). "[S]o long as the Debtor

32

remains in possession, it is clear that the corporation bears essentially the same fiduciary obligations to the creditors as does the trustee for the Debtor out of possession". Id. at 649. Specifically, in the case of an inanimate debtor in possession such as a corporation, the fiduciary duties borne fall on the debtor's directors, officers, and managing employees. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352 (1985) ("if a debtor remains in possession . . . the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"). Management has a duty to maximize the value of the estate and is "burdened to ensure that the resources that flow through the debtor in possession's hands are used to benefit the unsecured creditors and other parties in interest." Penick Pharm., 227 B.R. at 232–33 (citations omitted). Thus, upon filing its petition, the debtor becomes debtor in possession and, through its management, is burdened with the duties and responsibilities of a bankruptcy trustee.

The debtor, acting in the capacity of a debtor in possession, is the representative of the estate through which the estate acts, has substantially all of the rights and powers of a trustee, is required to perform many of the functions and duties of a trustee, and has a fiduciary duty to creditors and the estate. By contrast, the debtor when not acting in its capacity as debtor in possession, is not the representative of the estate, does not have any of the rights, powers or duties of a trustee, and does not have the same fiduciary duties of a debtor in possession. Thus, a debtor can exist in separate capacities in much the same way that an individual serving as trustee does not lose his or her separate identity but has rights, powers, duties and obligations as trustee that are separate from those in his or her personal capacity. 7 Collier on Bankruptcy P 1101.01 (16th 2021).

The debtor in its capacity as debtor in possession holds title to all property of the estate. The debtor, in its capacity other than as debtor in possession, holds title to non-estate property. A

debtor could dispose of such property, or pledge it as collateral, without court approval.   But if a debtor is acting with respect to property that is not property of the estate, or if a trustee has been appointed so the debtor is no longer a debtor in possession, the debtor is not acting as a representative of the estate.

Similarly, if a trustee is appointed, the debtor is no longer a debtor in possession and can not act as a representative of the estate.   When a chapter 11 trustee is appointed, the appointment short-circuits the prebankruptcy chain of command and transfers management functions to the trustee.   The debtor corporation's directors are completely ousted and retain no management powers.   See Weintraub, 471 U.S. at 352-53; Hillis Motors v. Haw. Auto. Dealers' Ass'n (In re Hillis Motors), 997 F.2d 581, 585 (9th Cir. 1993); see also H.R. Rep. 95-595, 95th Cong., 1st Sess. 220–221 (1977).   "[A] trustee is '*the* representative of the estate.'"   Official Comm. of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In Re W.R. Grace & Co.), 285 B.R. 148, 157 (Bankr. D. Del. 2002); see also Taub v. Taub (In re Taub), 427 B.R. 208, 232 (Bankr. E.D.N.Y. 2010) (explaining that a chapter 11 trustee acts on behalf of the estate).

The case of Penick Pharm., Inc., illustrates these concepts.   There, the court held a patented process developed post-petition by employees of a corporate debtor-in-possession was estate property.   When the manager of the debtor signed employment agreements on behalf of the debtor, he did so as agent of the debtor as debtor in possession and in furtherance of his fiduciary duties.   The agreements gave the debtor, as debtor in possession, on behalf of the estate, certain rights in the inventions of those employed, and the rights became property of the estate pursuant to section 541(a)(7) of the Bankruptcy Code.   The process was developed and tested by the debtor's employees using equipment and funds included in the Chapter 11 estate.   Moreover, the patent application was prosecuted on behalf of the estate using estate funds.   The court noted, were it to accept the argument that the manager obtained the benefit of the agreements not for the

estate but for the "post-petition debtor," the manager would likely have breached his fiduciary duties.   227 B.R. at 234 n.10; see also In re Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 539 n.6 (Bankr. S.D.N.Y. 2007)).

Here, the Buyback Option and the reacquired Property were property of the estate.   The Buyback Option was provided to the seller, ND as debtor in possession, as part of the consideration for the sale of the Property which was property of the estate.   The sale contract with Westplan provided "if after Closing Purchaser is denied rezoning and annexation by the applicable authorities, Seller[, ND,] shall have the right to purchase the Property . . . ." (Case No. 15-58440 Doc. No. 634 at 22, ¶ 26.)   Per section 541(a)(7), post-petition property acquired by the estate is property of the estate.   Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case[.]"   11 U.S.C. § 541(a)(6).   The Property which was sold was property of the estate.   The Buyback Option was part of the consideration for the sale of the Property, so it constitutes proceeds from property of the estate and post-petition property acquired by the estate.

Since only the estate could exercise the option, the property acquired through that exercise became property of the estate.   Thus, the Property, once reacquired, was property of the estate. Accent referenced the Buyback Option in its letter to ND; it followed the terms of the Buyback Option; ND, the debtor in possession, exercised the Buyback Option.   It worked very hard to meet the terms of the Buyback Option including price and deadline.   The funds used to exercise the Buyback Option were loaned by Rass and Norcross Hospitality to ND for the purpose of exercising the option.   The reacquisition of the Property from Accent was in ND's name – no other name.

Finally, the Court notes that, were it to accept the argument that ND obtained the benefit of the Buyback Option not for the estate but for the "post-petition debtor," ND and Mr. Thakkar

likely would have breached their fiduciary duties to the estate.    As fiduciaries, ND, as the debtor in possession and Mr. Thakkar, as ND's manager, were obligated to protect and conserve ND's property, including the Buyback Option and the reacquired Property, and were obligated to refrain from acting in a manner that could damage the estate or waste its assets.

For all these reasons, the Court finds the Buyback Option and the reacquired Property were property of the estate and Plaintiff has failed to plausibly state a claim for relief to the contrary.

### C. Abandonment

The Complaint references abandonment, seemingly as an example of the distinction between a debtor and the estate, but it stops short of arguing the Buyback Option and/or the Property were abandoned.    In any event, the Property was not abandoned, it was sold.    Sale is an alternative means of distributing the estate's property.    The Court is not aware of any theory that equates sale with abandonment, and Plaintiff does not present any.    Besides, the estate never abandoned the Property or the Buyback Option.

Abandonment requires notice and a hearing and a showing that the property is "burdensome to the estate or that is of inconsequential value and benefit to the estate."    11 U.S.C. § 554(a).    Bankruptcy Rule 6007(a) also requires 14-days' notice of a proposed abandonment to all creditors.    Property of the estate cannot be informally abandoned.    In re Hat, 363 B.R. 123, 138 (Bankr. E.D. Cal. 2007).    Unless otherwise ordered, "property of the estate that is not abandoned . . . and that is not administered in the case remains property of the estate."    11 U.S.C. § 554(d).

No properly noticed request to abandon the Buyback Option was ever filed.    Accordingly, the Buyback Option was not abandoned.    That exercise of the Buyback Option demonstrates that it was not abandoned.    Accordingly, the Court concludes the estate did not abandon the Property or the Buyback Option and dismissal of those allegations is appropriate.

D. Merger

The Complaint contends that when the Property was sold to Westplan in 2017 the Buyback Option merged with the deed and was voided.

In general, the merger doctrine provides a deed supersedes all prior inconsistent agreements or "understandings."  They are said to be merged or "swallowed up" into the contract, which stands as the final form of the agreement.   The doctrine of merger provides that "when a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed." Augusta Land Co. v. Augusta R. &c. Co., 140 Ga. 519, 522 (1913).   "The rational basis for the merger rule is that[,] where parties enter into a final contract[,] all prior negotiations, understandings, and agreements 'on the same subject' are merged into the final contract, and are accordingly extinguished."   Holmes v. Worthey, 159 Ga. App. 262, 267 (1981), aff'd, Worthey v. Holmes, 249 Ga. 104 (1982) (citation omitted).   Georgia courts follow "the general rule that antecedent sales contracts covering the purchase and sale of real property merge in a subsequent deed involving the same property", Jordan v. Flynt, 240 Ga. 359, 362 (1977), unless specifically reserved or unless they are not performed by delivery and acceptance of the deed.  See id. Importantly, the doctrine of merger merely creates a presumption of merger, and that presumption can be overcome with sufficient evidence to the contrary.   Charles S. Parnell, Annotation, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations Upon the Vendor*, 38 A.L.R.2d 1310.

Further, there may be independent and distinct agreements that do not merge and may still be enforced.   § 2:21. Merger rule, Ga. Real Estate Sales Contracts § 2:21 (6th ed.).   There is no merger where the intention of the parties to avoid merger is clear or where the provisions are clearly collateral.   An agreement that takes effect only upon occurrence of a condition subsequent, i.e., a condition that can only be performed after delivery of the deed, is a collateral agreement.

C & G Candler, Inc. v. Georgia Power Co., 138 Ga. App. 279, 280 (1976).  Where such an

agreement exists, there is no presumption that the agreement merges in a subsequently filed deed.

"[U]nder Georgia law, where an agreement for the sale of land contains covenants that are

clearly intended to occur after the execution of a deed contemplated thereby, such contractual

obligations do not merge into that deed."  In re Mitchell, 548 B.R. 862, 871 n.10 (Bankr. M.D.

Ga. 2016) (citing Holmes v. Worthey, 159 Ga. App. at 267).  Courts have found an option to

repurchase should be properly viewed as an independent and collateral agreement that survives a

deed so the presumption of merger does not apply.  See e.g., Bruggeman v. Jerry's Enterprises,

Inc., 591 N.W.2d 705 (Minn. 1999); Starr v. Wilson, 11 So. 3d 846, 855 (Ala. Civ. App. 2008)

(preemptive right of first refusal); Knight v. McCain, 531 So. 2d 590 (Miss. 1988) (agreement

regarding refund of their purchase price if a building permit were not obtained survived the deed

and was enforceable); Siebros Finance Corp. v. Kirman, 249 NYS 497 (1931) (option giving the

purchaser the right to resell the property to the seller after a certain date and agreement to reconvey

did not merge); but see Louis and Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.,

538 F. Supp. 2d 1045 (S.D. Ind. 2008) (under Indiana law, vendors' option to repurchase property

extinguished by the doctrine of merger).

The Court finds the record, including testimony taken in ND's bankruptcy case as reflected

in the transcripts entered in the record and other judicially noticed facts, indicates the doctrine of

merger does not apply.  First, the Buyback Option is a collateral agreement that can only take

effect after the closing.  The contract provided that Westplan/Accent would seek rezoning of the

Property and, if they were unsuccessful, the Buyback Option could be exercised.  This is a

collateral agreement showing on its face it was to survive the execution of the deed of sale.

Moreover, the pleadings and testimony in this case show the option to repurchase the Property was

to survive the deed.  At hearings on April 24 and 27, 2017, Mr. Thakkar and counsel for ND

argued the Buyback Option was valuable and would enable ND to repurchase the Property in the event the rezoning was denied.   The rezoning process would only begin after the sale of the Property; thus, it was evident the Buyback Option would only come in to play after a period of time and did not merge with the deed.   Access's understanding of the Buyback Option is evident in its letter to ND stating ND had a right to exercise the Buyback Option.   ND, as the debtor in possession, exercised the option and successfully bought back the Property.   The Court concludes the Buyback Option did not merge with the deed.   Consequently, Plaintiff has failed to state claims in accordance with Rule 12(b)(6) and the Complaint should be dismissed.

        F.   Claim for $100,000 Contribution

The Complaint seeks the immediate payment of $100,000, with interest, to Mr. Thakkar, his insider or affiliates, on the theory "they" contributed $100,000 to the purchase price of the Property.   Defendants contend Mr. Thakkar's failure to timely file an administrative claim bars his request for payment.   The Court notes it is not clear who the "Interest Holders" are that are Plaintiffs or that "they" paid the $100,000, or that the Plaintiff can even assert such a claim for "Mr. Thakkar, his insiders, or affiliates."

Moreover, on May 9, 2019, Mr. Thakkar filed a Motion to Establish Bar Date for Post-Petition Administrative Expenses (Case No. 15-58440 Doc. No. 1043), which was granted on June 26, 2019 (Case No. 15-58440 Doc. No. 1110).   Pursuant to the Court's order, August 15, 2019 was the last day to file post-petition administrative claims (except for claims of the Trustee and his professionals).   No one filed a claim for the $100,000 paid, even though it was paid two years earlier.   The Court concludes any request for payment is untimely.

In any event, Plaintiff has not sufficiently pled that it or anyone is entitled to a claim against ND for $100,000.   The demand for payment appears to be based on the faulty premise that the "Plaintiff" paid $100,000 to purchase the Buyback Option.   ND, as debtor in possession, sought

to sell the Property to Westplan.   At auction, Bay Point offered to pay $7.3 million to the estate for the Property, but without the Buyback Option, while Westplan offered only $7.2 million to the estate including the Buyback Option.   The Court was faced with deciding whether to grant ND's motion to sell to Westplan or to deny the motion because Bay Point offered a greater value.   While the class of equity holders typically gets little consideration in a bankruptcy case, where the value of the asset is sufficient to pay creditors in full and deliver value to the class of equity holders, the Court may consider the interests of the equity holders in making decisions.   That is what the Court did.   A class of ND's interest holders preferred a different sale structure, one that included the Buyback Option, to maximize the potential return on their interest.   The Court determined the resolution was for Mr. Thakkar, or another entity, to pay an additional $100,000 so the estate and Bay Point would not be prejudiced—under both sale scenarios the estate would receive $7.3 million.   The Plaintiff was not required to pay $100,000 for its <u>personal</u> benefit but for the benefit of the estate, in order to preserve the best value for the class of equity holders.

The Court concludes the claim for $100,000 is both untimely and unfounded, and dismissal is appropriate.

G.   <u>Effect of Dismissal</u>

Rass seeks dismissal with prejudice.   An adjudication that a Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) is an adjudication on the merits.   Fed. R. Civ. P. 41(b), made applicable to adversary proceedings by Fed. R. Bankr. P. 7041.   As such, a dismissal such as this is a final judgment on the merits entitled to res judicata.   <u>N.A.A.C.P. v. Hunt</u>, 891 F.2d 1555, 1560 (11th Cir. 1990); <u>Polk v. Sears Roebuck & Co.</u>, 2012 WL 1640708, *4 (S.D. Ala. May 8, 2012); <u>see also</u> <u>Williams v. Land</u>, 2020 WL 1264177, *5 (M.D. Ga. Mar. 16, 2020); <u>Solis v. Global Acceptance Credit Co.</u>, 601 Fed. Appx. 767, 770 (11th Cir. 2015); <u>Woodfork v. MidFirst Bank</u>, 2017 WL 8218967, *6 (N.D. Ga. April 11, 2017).   Moreover, given the complete lack of a basis

for the allegations in the Complaint, and the expiration of the time within which Plaintiff had the right to amend its Complaint under Fed. R. Civ. P. 15 and Fed. R. Bankr. P. 7015, the Court does not permit the Plaintiff to amend the Complaint.   No amendment can cure the lack of a claim asserted by Plaintiff, and any amendment would be futile.   See Hoke v. Lyle, 716 Fed. Appx. 930 (11th Cir. 2018); Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005).

## IV.   JURISDICTION

Rass asserts the Court lacks subject matter jurisdiction over this proceeding and seeks dismissal of the Complaint pursuant to of Fed. R. Civ. P. 12(b)(1).   The Court may also consider subject matter jurisdiction *sua sponte*.   Univ. of S. Alabama v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

Bankruptcy court jurisdiction is codified in 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. Pursuant to 28 U.S.C. § 1334, "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."   28 U.S.C. § 1334(b).   The bankruptcy court's jurisdiction is derivative of and dependent upon these bases.   Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1344 (11th Cir. 1999) (citing Celotex Corp. v. Edwards, 514 U.S. 300 (1995)).

The first category of cases, "arising under" proceedings, are matters invoking a substantive right created by the Bankruptcy Code.   Id. at 1345.   Such matters are considered core proceedings.   Id. at 1348 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). The second category, "arising in a case under title 11," is thought to involve administrative-type matters or matters that could arise only in bankruptcy, such as filing a proof of claim or an objection to the discharge of a particular debt.   See id. at 1345; see also 28 U.S.C. § 157(b)(2). The definition covers claims that "are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy."   Baker v. Simpson, 613 F.3d

346, 350-51 (2d Cir. 2010) (quoting In re Wood, 825 F.2d at 97).   These matters also typically constitute core proceedings.

Alternatively, a "proceeding [that] does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy" but is related to the bankruptcy case, is also within the Court's jurisdiction but is not a core proceeding. Toledo, 170 F.3d at 1348 (quoting Wood, 825 F.2d at 97).   28 U.S.C. § 157(c)(1).   In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), the Third Circuit Court of Appeals explained a civil proceeding is related to a bankruptcy case if "*the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy*." Id. at 994 (emphasis in original).   The Eleventh Circuit has adopted the Pacor test with little or no variation.   Celotex, 514 U.S. at 308 n.6; Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990).

Plaintiff's claims arise under the Bankruptcy Code and in a case under title 11.   The declaratory relief requested involves ND's rights under title 11.   Plaintiff's arguments relate to whether the Buyback Option and the reacquired Property were property of the estate.   It is generally recognized that "[a] proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E), . . . and that, [w]henever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court." In re Cox, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010) (citing 28 U.S.C. § 1334(d) (additional citations omitted)); see also In re Hafen, 616 B.R. 570, 578 (B.A.P. 10th Cir. 2020) (explaining the "jurisdiction to determine what is property of the bankruptcy estate lies exclusively with the bankruptcy court").

The claims also concern whether the Court's findings and orders authorizing the sale of the Property are valid.   A bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders." Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009); see also Miller v.

Kemira, Inc. (In re Lemco Gypsum), Inc., 910 F.2d 784, 788 (11th Cir.1990) ("We agree that courts should retain jurisdiction to enforce their orders . . . ."). Moreover, the fact the issue arises post-petition is not determinative. A suit that turns on alleged "wrongdoing in the sale of property belonging to the bankruptcy estate" falls within the Court's jurisdiction. Lindsey v. Duckworth Development II (In re Lindsey), 2021 WL 1140661, at *4 (11th Cir. 2021) (citation omitted).

Additionally, the "Plaintiff," for itself or for another unnamed entity, seeks to assert a claim in ND's bankruptcy case. Matters concerning the allowance of claims in a bankruptcy case are undoubtedly core. 28 U.S.C. § 157(b)(2)(B). As other courts have noted, a proceeding to rule on a creditor's proof of claim is perhaps the best example of a matter arising *in* a bankruptcy case. In re Tyler, 493 B.R. 905, 913 (Bankr. N.D. Ga. 2013).

These are all core matters. The factual underpinnings of the claims are premised entirely on what transpired in the course of ND's bankruptcy case, and Plaintiff's claims would have no existence outside of ND's bankruptcy case. This matter falls within the first two categories under 28 U.S.C. § 1334, and the Court has jurisdiction over Plaintiff's claims. Having considered the Complaint and the facts concerning the Bankruptcy Case, the Court concludes dismissal for lack of subject matter jurisdiction is not appropriate.

## V.    ABSTENTION

Rass contends the Court should abstain from hearing the case. Under 28 U.S.C. § 1334(c)(1), the Court has discretion to abstain from hearing a case "in the interest of justice, or in the interest of comity with State courts or respect for state law." Courts employ a multifactor test to determine whether abstention is appropriate. Courts consider the following nonexclusive factors:

> (1) the effect, or lack thereof, on the efficient administration of the bankruptcy estate if the discretionary abstention is exercised;
> (2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable law;
(4) the presence of related proceedings commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.

Ret. Sys. of Alabama v. J.P. Morgan Chase & Co., 285 B.R. 519, 530–31 (M.D. Ala. 2002)

(citation omitted).

These factors weigh against abstention in this adversary proceeding. This Complaint presents a bankruptcy question regarding whether certain property was in fact property of the estate. As explained above, a proceeding to determine whether property is property of the estate is a core proceeding over which the bankruptcy court has exclusive jurisdiction. Cox, 433 B.R. at 920. This proceeding thus raises a distinct bankruptcy issue, and this Court is the most appropriate forum in which to make a finding as to whether the Buyback Option and the Property were property of the estate. The applicable law is not difficult or unsettled, and the Court is very familiar with the property of the estate and capable of adjudicating Plaintiff's claims. This case does not impose a significant burden on the Court's docket and can be managed efficiently.

Rass contends the Court should abstain because there is a pending state court action relating to the Property. The state court action relates to a dispute that has arisen since the Second Sale. Any disputes that may have arisen since the Second Sale are not related to ND's bankruptcy case, as best the Court can discern at this time. The state court causes of action are not created by the Bankruptcy Code and do not arise only in bankruptcy proceedings—the proceeding can, and does,

exist separate from the bankruptcy case in another forum.   Any questions about the fate of the

Property moving forward can and should be resolved in another forum.

The questions presented in this adversary proceeding concern whether the Buyback Option

and the Property, once reacquired, were property of the estate.   These are fundamental questions

of bankruptcy law raised in a core proceeding.   Abstention is not appropriate.   For these reasons,

the Court declines to abstain from hearing Plaintiff's claims.

## VI.   CONCLUSION

As the Supreme Court has stated, "it is just as important that there should be a place to end

as there should be a place to begin litigation."   Travelers Indem. Co. v. Bailey, 557 U.S. 137, 154

(2009) (citation omitted).   The issues raised in the Complaint have been decided by the Court.   A

year and a half after the Second Sale, and after the effective date of the Plan, Plaintiff seeks, for

the first time, to assert a new theory and to question the Court's prior determinations.   The time

to do so is over.   Accordingly, for the reasons stated above, the Court finds dismissal of Plaintiff's

claims pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate.   Therefore,

**IT IS ORDERED** that the Trustee's Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Rass's Motion is **GRANTED IN PART AND
DENIED IN PART**.

**IT IS FURTHER ORDERED** that the above-styled adversary proceeding is
**DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6).

**END OF ORDER**

**<u>Distribution List</u>**

John Alan Moffa
Moffa & Breuer, PLLC
Suite 204
3081 East Commercial Blvd.
Fort Lauderdale, FL 33308

M. Todd Westfall
Westfall, LLC
4995 Lower Roswell Rd.
Suite 6
Marietta, GA 30068

Jeffrey D. Horst
Krevolin & Horst, LLC
1201 W. Peachtree St., NW
Suite 3250, One Atlantic Center
Atlanta, GA 30309

Lisa Wolgast
Morris, Manning & Martin LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326

Frank W. DeBorde
Morris, Manning & Martin LLP
3343 Peachtree Rd., N.E., Suite 1600
Atlanta, Georgia 30326